UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20784-CIV-DUBÉ

**CONSENT CASE**

PEDRO CALZADILLA,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #18) and the Motion for Summary Judgment filed by the Defendant (D.E. #19) pursuant to the consent of the parties and an Order of Reference entered by the Honorable Cecilia M. Altonaga, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff, Pedro Calzadilla (hereinafter "Calzadilla" or "Plaintiff").

### I. FACTS

On May 8, 2007, Calzadilla filed applications for disability insurance benefits and supplemental security income asserting he has been disabled and unable to work since January 1, 2005. (R. 85-86, 87-93).[1] The applications were denied initially and on reconsideration. (R. 36-55). Following a hearing on June 15, 2009 (R.9-21), the ALJ issued a decision denying the request for

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

benefits. (R. 22-35). A request for review filed with the Appeals Council was denied. (R. 1-5).

The Plaintiff testified at the hearing on June 15, 2009, with the assistance of an interpreter. (R. 9). The Plaintiff stated that for the past 15 years he has worked in grocery stores stocking shelves and baking bread. (R. 12). The Plaintiff further stated he was laid off, but does not know why. (R. 12-13). According to Calzadilla, he is unable to work because he does not have enough energy and has problems standing and walking. (R. 13). He further explained he has problems "standing in the feet and knees." (R. 13-14). When asked how much he was able to lift/carry at his previous job, the following colloquy took place between the ALJ and the Plaintiff:

> A   It depends. The boxes of gallons, of six gallons, weights about 30 pounds.
>
> ...
>
> Q   You are no longer strong enough to lift 30 pounds?
>
> A   That weighs about, weighs like 80 pounds.
>
> Q   Oh, 80 pounds. Okay. So you're no longer strong enough to weigh, to lift 80 pounds?
>
> A   No.
>
> Q   Okay. How much can you lift?
>
> A   I don't know because I have not worked any longer after that and it's two years ago.

(R. 13).

The Plaintiff asserted he has not gone to see a doctor because he does not want to get hospitalized. Calzadilla further asserted he has a limp and "sort of a gout problem." When asked how he knows that he has gout, he responded as follows: "A friend of mine gave me the gout

2

medication because he was suffering from the gout." (R. 14). According to the Plaintiff, his friend's gout medication helped him. (R. 14).

Additionally, the Plaintiff testified he has mental problems and has been on medication for the last 2 years. The Plaintiff stated the medicines help "a lot." However, Calzadilla also stated he would be unable to return to his prior work due to lack of memory. He explained that when he does not take his medications, "the problems related to alcohol substance abuse flare up." The Plaintiff submitted he last drank 2 years ago. (R. 15).

The Plaintiff listed his medications as follows: Celexa (10 milligrams, 1 tablet); Temazepam (10 milligrams, 1 tablet); Risperdal (1 milligram, 1 tablet); and Lorazepam (1 milligram, 1 tablet). Relating to his medications, the following colloquy took place:

> Q   And you say that those do help? But do they have side effects?
>
> A   I don't know what to tell you. I just know that when I take the medications, they set me well.
>
> Q   Okay, all right.
>
> A   The thing is, when I don't take the medications, then I'll forget like this. And then I get anxiety and depression.

(R. 16).

According to the Plaintiff, sometimes he forgets to take his medications for up to 1 week before becoming aware that he has not taken his medications. The Plaintiff asserted he is not able to mentally perform his prior job because he is "taking medications so [he does not] feel [he is] in the condition to do that job." (R. 17).

The Plaintiff testified he lives at a Christian center for people involved with drug and alcohol

abuse, and his typical day consists of working in the laundry, "fixing, dealing with clothes; an easy job." (R. 17-18). Specifically, the Plaintiff stated he washes, dries and folds clothes, then puts them in a bag. (R. 18). When he started at the center he worked 8 hours per day Monday through Friday, and 4 hours on Saturday; but now that he has completed the program, he works from 8:00 a.m. to noon and then lays down to sleep. (R. 18-20). In return for work, he is compensated with shelter, food, clothes, and $20.00 every 2 weeks. (R. 18-19).

The Plaintiff submitted he retired in February 2009 and receives $298.00. (R. 18). Additionally, Calzadilla submitted he will be moving to a low-income housing apartment in 2-3 weeks. (R. 19). According to the Plaintiff, there are no other problems that would prevent him from working. (R. 20).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and a review of the record, the ALJ issued an opinion finding that the Plaintiff had the severe impairments of pain and swelling of the left knee; and the non-severe mental impairment of alcohol abuse and depression. (R. 30). The ALJ determined that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. Specifically, the ALJ found that the Plaintiff's knee problems did not meet any of the listed musculoskeletal impairments in section 1.00 of the listings. The ALJ further determined that the Plaintiff retained the residual functional capacity to perform a full range of medium work, and

thus, was not disabled within the meaning of the Social Security Act. (R. 34-35).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than preponderance of the evidence and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure

by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. See Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed doing any substantial gainful activity. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the

national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The Plaintiff contends that the ALJ failed to develop the record and did not accord proper weight to the evidence, therefore, the ALJ's residual functional capacity was not supported by substantial evidence. The issues raised by the Plaintiff are all interrelated since they pertain to the Plaintiff's RFC, and thus, the Court will address the issues together.

The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007). Further,

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

Specifically, the Plaintiff argues that contrary to his hearing testimony, disability application and the DOT, the ALJ improperly determined that he has the ability to perform a full range of medium work. According to the Plaintiff, he testified that in his previous job he was required to lift 80 pounds, not 30 pounds as originally thought.

The regulations define "medium" work as follows:

7

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(a).

With regard to the Plaintiff's credibility and impact on his RFC, the ALJ stated as follows:

> occasionally lift/carry as much as fifty pounds, frequently lift/carry as much as twenty-five pounds, sit for six hours out of an eight hour work day, and could stand/walk for six hours out of an eight-hour work day, with push/pull capabilities subject to the same quantitative limitations to which his lift/carry abilities are subject.

(R. 31).

After determining the Plaintiff's RFC, the ALJ determined the Plaintiff could return to his past relevant work as a stock clerk. The ALJ specifically stated as follows:

> In a statement dated March 27, 2009, the claimant stated that his previous work had involved work as [a] stock clerk in supermarkets (Exhibit 9F). The Dictionary of Occupational Titles assigns this job code number 299.367-014, at the "heavy" exertional level, with an SVP of 4. However, because the claimant actually performed his past work between the "light" and "medium" exertional levels, I find that the claimant is able to perform it as actually performed.

(R. 34).

It is well established that pain alone can be disabling. Walker v. Bowen, 826 F. 2d 996, 1003 (11th Cir. 1987). In determining whether the Plaintiff suffers from disabling pain; the following test must be satisfied:

> [T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected

8

to give rise to the claimed pain.

Lamb v. Bowen, 847 F. 2d 698, 702 (11th Cir. 1988).

In the instant case, the first prong of the Lamb test was satisfied as the ALJ found the existence of an underlying medical condition. The ALJ found that the Plaintiff suffered from pain and swelling of the left knee, a severe impairment but not severe enough to meet or medically equal, either singly or in combination to one of the listed impairments listed in Appendix 1, Subpart P, Regulation No. 4. (R. 30).

The analysis then shifts to the second prong of the test. Disabling pain could be shown in one of two methods. One, by objective medical evidence confirming the severity of the alleged pain or by showing that the underlying objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain. Lamb, at 702.

Once the ALJ determined that the objective medical evidence did not confirm the severity of the Plaintiff's alleged pain he must then look towards the Plaintiff's subjective complaints and determine whether they can reasonable be expected to produce the alleged pain. "Whether or not the condition could be expected to give rise to the complained of pain is a question of fact subject to the substantial evidence standard of review." Lamb, at 702, citing to, Hand v. Heckler, 761 F. 2d 1545, 1549 (11th Cir. 1985); Boyd v. Heckler, 704 F. 2d 1207, 1209 (11th Cir. 1983).

The credibility of the Plaintiff's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb, at 702. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F. 3d 1219, 1225 (11th Cir. 2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that

the testimony be accepted as true. Id.

While, an ALJ may not reject a plaintiff's subjective complaints of pain simply by the lack of objective evidence, the allegations of a severe impairment should be supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172-1173 (11th Cir. 1984).

Further, the claimant's testimony of pain or other subjective symptoms standing alone, are not conclusive evidence of disability. See, Macia v. Bowen, 829 F. 2d 1009, 1011 (11th Cir. 1987). If an ALJ rejects a claimant's testimony on credibility grounds, the ALJ must explicitly state as much and give adequate reasons for that determination. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination must not be "a broad rejection." Dyer, 395 F.3d at 1211. Failure to set out the reasons for the discrediting of subjective pain testimony mandates, as a matter of law, that the testimony be accepted as true. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

In the instant matter, the ALJ stated as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. 34).

The Court finds that the ALJ's credibility analysis is not supported by substantial evidence.

As noted above, the Plaintiff testified at the hearing that he was required to lift/carry up to 80 pounds at his prior job. (R. 13). This testimony was not reviewed by the ALJ and it appears the basis of finding the Plaintiff not disabled hinged on the amount of weight Calzadilla was required to lift/carry at his prior job. Furthermore, on his Disability Report application, Calzadilla noted the "heaviest weight lifted" as 70 pounds (R. 116). However, on his Work History Report the "heaviest weight lifted" he noted was 20 pounds. (R. 122-123). While it is not required that the ALJ refer to every piece of the evidence, the Court finds that the ALJ did not specifically set forth sufficient reasons for rejecting the Plaintiff's testimony and the ALJ's decision acted as a broad rejection.

This Court agrees with the Plaintiff and finds that the ALJ failed to specifically state a basis for rejecting the Plaintiff's testimony or provide clarification for the record as a whole. The Court finds that this discrepancy in the record has not been clarified by the ALJ, and thus, remand on this basis is required.

As detailed above, this Court finds the ALJ did commit error in the evaluation of the Plaintiff's credibility, and thus, the decision of the ALJ is reversed and remanded for the specific purposes of allowing for a proper credibility analysis; the determination of a new RFC; and the issuance of a revised decision by the ALJ. While the Court finds that error is present it does not find an award of benefits is required at this time.

### III. CONCLUSION

Based on the foregoing, this Court finds that the decision by the ALJ is not supported by substantial evidence and that the correct legal standards were not applied. Accordingly, it is ORDERED AND ADJUDGED as follows:

(1) The Motion for Summary Judgment filed by the Plaintiff (D.E. #18) is **GRANTED**

**in part**.

   (2)   The Motion for Summary Judgment filed by the Defendant (D.E. #19) is **DENIED**.

   (3)   The decision of the Commissioner is **REVERSED AND REMANDED** so that a proper credibility analysis can be made and a new RFC can be determined.

   **DONE AND ORDERED** this __30__ day of November, 2010.

                                        _____
                                        ROBERT L. DUBÉ
                                        UNITED STATES MAGISTRATE JUDGE